| | |
|---|---|
| MATTHEW BRYAN MARTIN, | No. 2:17-cv-1538 KJM GGH |
| Petitioner, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| SCOTT FRAUENHEIM, | |
| Respondent. | |

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

*Introduction and Summary*

This case involves a petitioner, with gang ties, who was convicted of robbery and an after-the-fact-of-robbery battery as a lesser included offense of mayhem. Petitioner was also convicted of participating in the robbery as a member of a gang. The superficial twist to this case involves the fact that the Court of Appeal found the evidence insufficient to sustain a charge of assault with great bodily injury, but upheld the battery/mayhem conviction. The petition for writ of habeas corpus was filed on July 14, 2017. ECF No. 1. Respondent filed an Answer on October 30, 2017, ECF No. 13, and petitioner filed a Traverse on December 4, 2017. ECF No. 14.

Petitioner brings the following issues:

1. The evidence for the robbery conviction was insufficient in that it failed to show that

1

1. petitioner was at the scene of the robbery;
2. The evidence was otherwise insufficient to support the robbery conviction;
3. Insufficient evidence for battery as a lesser included offense to mayhem.

If petitioner's assertions were meritorious, his gang affiliation would become inconsequential as there would be no crime left to attach the affiliation. Unfortunately for petitioner, his predicate assertions fail, and the petition should be denied.

*Factual Background*

The underlying facts in this case are best explained by the Third District Court of Appeal's review of petitioner's appeal which rendered the last reasoned decision in this matter published "as modified on denial of rehearing 9/2/2016." Exhibit A to Respondent's Answer.

> **Opinion**
> ***1** Defendant Matthew Bryan Martin, along with other Norteno gang members, participated in an attack on Osvaldo Hernandez and Victor Arechiga. Defendant stole beer that Arechiga had just purchased and put in the back of Hernandez's car. Then, another of the gang members slashed Hernandez's face. We conclude the evidence was not sufficient to convict defendant of assault by means of force likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(1))[1] and accept the People's concession that the sentence imposed on defendant's conviction for active participation in a criminal street gang (§ 186.22, subd. (a)) should be stayed. We find no merit in the remainder of defendant's contentions.
>
> PROCEDURAL AND FACTUAL BACKGROUND
>
> In the early morning hours of September 20, 2009, Osaldo Hernandez drove acquaintance Victor Arechiga to a gas station with a convenience store in order to buy beer. Hernandez parked in front of the store, and Arechiga went inside to buy beer. Arechiga came out of the store with two 30-packs of beer. Two girls were walking behind Arechiga. Arechiga looked back and said something to the girls.
>
> Arechiga put the beer on the backseat of Hernandez's car; a group of men approached the car and asked Arechiga what he said to the girls. Defendant took a swing at Arechiga. Believing defendant was going to beat him up, Arechiga backed up and "squared off." The other men with defendant then rushed the car. One of the men yelled, "Are you a scrap?" or, "You're a scrap," a disrespectful term used by Nortenos for Surenos and defendant took the beer from the backseat. At the same time, the other men began hitting and kicking Hernandez as he sat in

---

[1] [court footnote] Undesignated statutory references are to the Penal Code.

the driver's seat, trapped because one of the men was blocking the door. Someone else then entered the car from the front passenger door, leaned over, and slashed Hernandez across the right cheek from his ear to this mouth – splitting open his face. This left Hernandez with a "bitch mark" or "puta mark," signifying Hernandez is no good within the gang." Such marks are left intentionally to mark the victim for life. Leaving such a mark often benefits the Nortenos and boosts the status of the gang member who inflicted it.

In 2011, defendant and three other men were tried by jury for crimes committed during the attack on Hernandez.[2] The jury found defendant guilty of second degree robbery (§§ 211, 212.5, subd. (c), assault by means of force likely to produce great bodily injury (245, subd. (a)(1)), active participation in a criminal street gang (§ 186.22, subd. (a)), and battery causing serious bodily injury (§ 243, subd. (d)), a lesser included offense to the charged offense of aggravated mayhem (§ 205).

**\*2** In a bifurcated proceeding, the trial court found true the People's allegations that defendant was previously convicted of a strike offense and served two prior prison terms. The trial court sentenced defendant to an aggregate term of 19 years four months in state prison, awarded him 1,001 days of custody credit, and ordered him to pay various fines and fees.

People v. Martin, 2016 WL 4156687 at*1-2 (Cal. App. 2016)

*AEDPA Standards*

The statutory limitations of the power of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). The text of § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;

---

[2] [court footnote] The three other defendants were Jose Rivas, Michael Santiago, and Arturo Vega. The jury deadlocked on all counts related to Rivas and the trial court declared a mistrial. The jury found Santiago and Vega not guilty on all counts. Rivas was later convicted of aggravated mayhem, robbery, aggravated assault, and participation in a criminal street gang along with various firearm and gang enhancements. (*See People v. Rivas* (2015) 238 Cal.App.4th 1967.)

3

Or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), clearly established federal law consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. Thompson v. Runnels, 705 F.3d 1089, 1096 (9th Cir.2013) *citing* Greene v. Fisher, 565 U.S. 34, 39 (2011); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir.2011) *citing* Williams v. Taylor, 529 U.S. 362, 405-406 (2000). Circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." Marshall v. Rodgers, 569 U.S. 58, 63-64 (2013) *citing* Parker v. Matthews, 587 U.S. 37, 48 (2012). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct. Id. A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. Lockyer v. Andrade, 538 U.S. 63, 75 (2003); Williams, supra, 529 U.S. at 413; Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir.2004). In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, supra, 529 U.S. at 412. See also Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Lockyer, supra, 538 U.S. at 75 (it is "not enough that a federal habeas court, 'in its independent review of the legal question,' is left with a 'firm conviction' that the state court was 'erroneous.'" "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the

correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) *quoting* Yarborough v. Alvarado, 541 U.S. 652, 664 (2004). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, supra, 562 U.S. at 103.

The court looks to the last reasoned state court decision as the basis for the state court judgment. Stanley, supra, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir.2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir.2007) (*en banc*). "[Section] 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" Harrington, supra, 562 U.S. at 100. Rather, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Id. at 99. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." Id. at 99-100. Similarly, when a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a "federal habeas court must presume (subject to rebuttal) that the federal claim was adjudicated on the merits." Johnson v. Williams, 568 U.S. 289, 293 (2013). When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. Stanley, supra, 633 F.3d at 860; Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir.2006); Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir.2003).

The state court need not have cited to federal authority, or even have indicated awareness of federal authority in arriving at its decision. Early v. Packer, 537 U.S. 3, 8 (2002). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a

federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Stanley, supra, 633 F.3d at 860; Himes v. Thompson, 336 F.3d 848, 853 (9th Cir.2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Id. at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." Harrington, supra, 562 U.S. at 98. A summary denial is presumed to be a denial on the merits of the petitioner's claims. Stancle v. Clay, 692 F.3d 948, 957 & n. 3 (9th Cir. 2012). While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court must review the state court record to determine whether there was any "reasonable basis for the state court to deny relief." Harrington, supra, 562 U.S. at 98. This court "must determine what arguments or theories ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.'" Id. at 101 *quoting* Knowles v. Mirzayance, 556 U.S. 111, 122 (2009). Emphasizing the stringency of this standard, which "stops short of imposing a complete bar of federal court relitigation of claims already rejected in state court proceedings[,]" the Supreme Court has cautioned that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. at 102, *citing* Lockyer v. Andrade, 538 U.S. 63, 75 (2003).

The petitioner bears "the burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" Walker v. Martel, 709 F.3d 925, 939 (9th Cir.2013) *quoting* Harrington, 562 U.S. at 98. Circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." Marshall v. Rodgers, supra, 569 U.S. at 64. Nor may it be used to "determine whether a particular rule or holding in a prior decision of [the Supreme] Court" . . . is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be

accepted as correct. Id. at 102. A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. Lockyer v. Andrade, 538 U.S. 63, 75 (2003); Williams, supra, 529 U.S. at 413; Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir.2004). In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, supra, 529 U.S. at 412; see also Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Lockyer, supra, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court decision was 'erroneous.' A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington, supra, 562 U.S. at 101 *quoting* Yarborough v. Alvarado, 541 U.S. 652, 664 (2004). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, supra, 562 U.S. at 103.

With these principles in mind the court turns to the merits of the petition.

*Discussion*

    A. <u>Sufficiency of the Evidence (Claims 1 and 2)</u>

As set forth above, petitioner, claims that the evidence was insufficient to show that he was at the scene of the robbery (Claim 1), and that in any event, the evidence was insufficient to show that a robbery took place, (Claim 2). As always, the focus of an AEDPA review is the last reasoned decision of the state courts. The discussion begins with the Court of Appeal analysis:

7

*Sufficiency of the Evidence*

Defendant contends the evidence was insufficient to convict him on any of the charges. He claims that, as to all of the charges, the evidence was insufficient to establish that he was present at the scene of the crimes. As to the robbery count, he claims the evidence was insufficient that Hernandez possessed the stolen beer. He also claims the evidence was insufficient to convict him on the remaining counts of assault, battery, and participation in a criminal street gang. We conclude that, with the exception of the assault charge, the evidence was sufficient to convict defendant of each of these charges.

A. *Legal Background*

" 'In reviewing the sufficiency of evidence under the due process clause of the Fourteenth Amendment to the United States Constitution, the question we ask is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." ' [Citation.] We apply an identical standard under the California Constitution. 'In determining whether a reasonable trier of fact could have found defendant guilty beyond a reasonable doubt, the appellate court "must view the evidence in a light most favorable to respondent and presume I support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." ' [Citation.]: (*People v. Young* (2005) 34 Cal.4th 1149, 1175, italics omitted.) In reviewing the sufficiency of the evidence, "a reviewing court resolves neither credibility issues nor evidentiary conflicts. [Citation.] Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact. [Citation.]" ' "(*People v. Manriquez* (2005) 37 Cal.4th 547, 577.)

B. *Analysis*

1. Presence at the Scene

Defendant contends the evidence presented at trial was insufficient to prove he was present at the scene of the attack. To the contrary, the attack was recorded by surveillance cameras. That video was admitted into evidence. After watching the video, two detectives and a parole officer identified defendant, whose left arm is amputated below the elbow and whose neck is tattooed, as present at the scene of the attack. Such evidence is sufficient to place defendant at the scene of the attack.

2. Robbery

*3 Defendant argues the evidence was insufficient to convict him of robbery because the evidence was insufficient to show Hernandez had possession of the beer when it was stolen. We disagree.

8

> "Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (§ 211.) A person possesses property if he owns it or has direct physical control over it. (*People v. Scott* (2009) 45 Cal.4th 743, 749.) Here, the property at issue was the beer purchased by Arechiga. That beer was on the backseat of Hernandez's car and Hernandez was still in the driver's seat when defendant sole it. Hernandez could have driven off with the beer, drunk the beer, or thrown the beer out of the car window. Because it was inside his car, Hernandez also could exclude strangers from getting the beer.
>
> The evidence shows Hernandez had direct physical control over the beer and was, therefore, in possession of the beer when it was stolen. Just because Hernandez chose not to stop defendant from taking the beer does not, as defendant suggest, belie the fact that Hernandez possessed the beer. Indeed, defendant cites no authority to support a rule that a victim must defend the property being stolen in order to establish possession. Such a rule would be misguided in any event. There also is no basis in the law or logic for defendant's argument that because Hernandez did not intend to drink the beer that he did not possess the beer.

### 1. Federal Standard of Review

"A petitioner for a federal writ of habeas corpus faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds." Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir.2005). Sufficient evidence supports a conviction if, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)." "After AEDPA, we apply the standards of Jackson with an additional layer of deference." Juan H. v. Allen, supra, 408 F.3d at 1274. See also the AEDPA standards set forth above. Moreover, petitioner's challenge to the sufficiency of evidence based on credibility of the witnesses is not cognizable in an insufficient evidence claim. See McMillan v. Gomez, 19 F.3d 465, 469 (9th Cir.1994); see also Schlup v. Delo, 513 U.S. 298, 330 (1995) (recognizing that the credibility of witnesses is generally beyond the scope of sufficiency of the evidence review). Therefore, when a challenge is brought alleging insufficient evidence, federal habeas corpus relief is available if it is found that upon the record evidence adduced at trial, viewed in the light most favorable to the prosecution, no rational trier of fact could have found "the essential elements of the crime" proven beyond a reasonable doubt. Jackson, supra, at 319.

9

In Jackson the Supreme Court articulated a two-step inquiry for considering a challenge to a conviction based on sufficiency of the evidence. United States v. Nevils, 598 F.3d 1158, 1164 (9th Cir. 2010) (*en banc*). First, a reviewing court must consider the evidence presented at trial in the light most favorable to the prosecution. Jackson, supra, at 319. When "faced with a record of historical facts that supports conflicting inferences" a reviewing court "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Id. at 326; see also McDaniel [v. Brown], 558 U.S. 120, 132 (2010). Second, after viewing the evidence in the light most favorable to the prosecution, the reviewing court must determine whether this evidence, so viewed, is adequate to allow "any rational trier of fact [to find] the essential elements of the crime beyond a reasonable doubt." Jackson, supra at 319. "At this second step, we must reverse the verdict if the evidence of innocence, or lack of evidence of guilt, is such that all rational fact finders would have to conclude that the evidence of guilt fails to establish every element of the crime beyond a reasonable doubt." Nevils, supra, 598 F.3d at 164–1165. And, where the trier of fact could draw conflicting inferences from the facts presented, one favoring guilt and the other not, the reviewing court will assign the one which favors conviction. McMillan v. Gomez, 19 F.3d 465, 469 (9th Cir. 1994). However, the mere fact that an inference can be assigned in favor of the government's case does not mean that the evidence on a disputed crime element is sufficient—the inference, along with other evidence, must demonstrate that a reasonable jury could find the element beyond a reasonable doubt, i.e., "'[a] reasonable inference is one that is supported by a chain of logic, rather than mere speculation dressed up in the guise of evidence.'" United States v. Katakis, 800 F.3d 1017, 1024 (9th Cir. 2015).

In reviewing the sufficiency of the evidence supporting a conviction, we search the record to determine "whether a reasonable factfinder, after viewing the evidence in the light most favorable to the government, could have found the defendants guilty beyond a reasonable doubt of each essential element of the crime charged." United States v. Douglass, 780 F.2d 1472, 1476 (9th Cir.1986). The relevant inquiry is not whether the evidence excludes every hypothesis except guilt, but whether the factfinder could reasonably arrive at its verdict. United States v.

Fleishman, 684 F.2d 1329, 1340 (9th Cir.), *cert. denied*, 459 U.S. 1044 (1982); United States v. Federico, 658 F.2d 1337, 1343 (9th Cir.1981)(overruled on other grounds), United States v. De Bright, 730 F.2d 1255, 1259 (9th Cir.1984) (*en banc*).

The factual summation of the trial given by the Court of Appeal, presumed correct, is set forth in full above. It is that factual analysis to which petitioner must show such a distortion of reality in the evidence, that reasonable jurists reviewing the record could not come to the conclusion about the sufficiency of the evidence, *i.e.*, that no reasonable juror could have arrived at the verdict which the jury in this case did.

### 2. Sufficiency of Identification of Petitioner

Petitioner contends that since the three victims were unable to identify him, despite being able to identify the other defendants and having claimed they believed they could identify all of the perpetrators, there is insufficient evidence that he was even at the scene. Petitioner is undoubtedly upset as two of his co-defendants were eventually acquitted.

In fact, a review of the transcripts[3] of the trial testimony performed by this court shows that although not all witnesses identified petitioner, there were witnesses who did identify petitioner as present at the crime scene and at least one professes to have seen him punch one of the victims. While the primary victim, Ozvaldo Hernandez, was able to identify one of the defendants in the courtroom during his testimony – Jose Rivas – he could not identify petitioner. RT 115:5-10. The second victim, Victor Arechiga, could identify only one of the defendants during his testimony – defendant Vega. RT 193:20-27. Mike Ha, a probation officer, identified defendants Rivas and Vega only. 301:15-16. Another parole officer, Marcos Perez, however, testified that he knew petitioner as his partner supervised petitioner as a probationer and the witness shared duties with the partner. RT 393:12-27, 395:27-396:74. Officer Perez identified petitioner both from seeing him in the courtroom, RT 398:4-13, and from viewing the surveillance video from the site of the attack. RT 405:15-19. He said he first noticed Martin in the video when he threw a punch. RT 4-5:15-19, and he saw his missing limb. RT 405:6-10, and

---

[3] The Reporter's Transcript was lodged by respondent at "RT, Vol. I-IV, and the citations are to the reporter's pagination of those documents.

that led him to the identification he made in court. 406:6-16, 412:4-10. Officer Cortez, who responded to the scene of the attack, interviewed witness Christy Hernandez, who told him one of the attackers had a tattoo on his neck as did a second witness, O'Connor. 431:27-432:2. Officer Omar Flores, who is assigned to the Woodland gang unit, identified all of the defendants, including petitioner, as members of the Nortenos street gang. Finally, Jennifer Hernandnez, an uninvolved witness who was present at the scene identified defendants Rivas and Santiago from the witness stand as participants in the attack, RT 566:28-567:1, she verified her initials on two photographs in photo line-ups she viewed after the incident, one of which was petitioner and the other of which was defendant Vega. ECF No. 562:4-20, 574:3-22. She also informed the authorities that she saw a tattoo of a star inside a circle on the neck of one of the perpetrators. ECF 591:13-27. Petitioner has such a tattoo. See 3:19-21, supra.

Keeping in mind the fact that "[t]he habeas corpus petitioner bears the burden of demonstrating the objectively unreasonable nature of the state court decision in light of the controlling Supreme Court authority discussed above, the court has reviewed the "record evidence adduced at trial, viewed in the light most favorable to the prosecution," and the undersigned is unable to conclude that no rational trier of fact of fact could have found petitioner present at the scene of the robbery based on the evidence put before the jury in this case. See Jackson, supra, 443 U.S. at 319. Although the identity evidence may not have been as strong against petitioner as it was against defendants Santiago and Vega, "it is the province of the jury to 'resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts.' "Fulford v. Clay, 2008 WL 802342 *5 (E.D.Cal. 2008), *quoting* Jackson, supra, 443 U.S. at 319. For this court to jettison the deliberated decision of the jury based on an independent determination of fact would require a "factual error . . . so apparent that 'fairminded jurists' examining the same record could not abide by the state court factual determination." Miller v. Figueroa, 2015 WL 8780633 *3 (E.D.Cal. 2015) *citing* Rice v. Collins, 546 U.S. 333, 338 (2006). In other words, the relevant inquiry is not whether the evidence excludes every hypothesis, but whether the jury could reasonably arrive at its verdict. United States v. Federico, 658 F.2d 1337, 1343 (9th Cir. 1981), *overruled on other grounds*, United States v. De Bright 730 F.2d 1255, 1259

(9th Cir. 1984).

### 3. Sufficiency of Proof a Robbery Occurred

In his traverse petitioner claims that since the criminal charge of robbery brought against him and the jury instruction on robbery both named Hernandez, the driver of the car from which the subject of the robbery – a case of beer – was taken, the fact of a robbery could not be proven for the following reasons: (1) Hernandez was merely transporting the beer on behalf of his passenger, Arechiga; (2) Hernandez testified that he was under age and could not purchase beer; (3) Hernandez testified he had not contributed money to the purchase of the beer; and (4) Hernandez testified that he had no intention of drinking any of the beer. ECF No. 14 at 11:12:8. Rather Mr. Arechiga purchased the beer, intended to drink it with his friends, and remained at the scene during the attack. Id. at 12:2-8. Thus, the charge that petitioner "willfully and unlawfully took personal property *in the possession of another person, to wit, O.H., i.e., Osvaldo Hernandez*, against the person's will, accomplished by means of force or fear," was not proven in court. Id. at 8:27-9:3.

The Court of Appeal in this case found:

> "Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (§ 211.) A person possesses property if he owns it or has direct physical control over it. (*People v. Scott* (2009) 45 Cal.4th 743, 749.) Here, the property at issue was the beer purchased by Arechiga. That beer was on the backseat of Hernandez's car and Hernandez was still in the driver's seat when defendant stole it. Hernandez could have driven off with the beer, drunk the beer, or thrown the beer out of the car window. Because it was inside his car, Hernandez also could exclude strangers from getting the beer.
>
> The evidence shows Hernandez had direct physical control over the beer and was, therefore, in possession of the beer when it was stolen. Just because Hernandez chose not to stop defendant from taking the beer does not, as defendant suggests, belie the fact that Hernandez possessed the beer. Indeed, defendant cites no authority to support a rule that a victim must defend the property being stolen in order to establish possession. Such a rule would be misguided in any event. There also is no basis in the law or logic for defendant's argument that because Hernandez did not intend to drink the beer that he did not possess the beer.

People v. Martin, at *3

Petitioner relies on People v. Scott, 45 Cal.4th 743-749-750 (2009), but ultimately that case does not help petitioner. First, the Court of Appeal cited Scott, and its interpretation of state law is binding. Bradshaw v. Richey, 546 U.S. 74, 76 (2005).

Secondly, in People v Scott, 45 Cal.4th 743. 749 (2009) the California Supreme Court held that mere employees of a business establishment who were present when money was stolen in their presence were not victims of the robbery unless they "owned" the property or "exercised direct physical control over it" for purposes of establishing robbery. The court also noted that constructive possession of the property of another was sufficient to establish the one from whom it was taken as a robbery victim. Id. at 751. After assessing several situations in which the immediate victim was not the "owner" of the property, Scott indicated that

> the Legislature has included as victims those persons who, because of their relationship to the property or its owner, have the right to resist the taking, and has excluded as victims those bystanders who have no greater interest in the property than any other member of the general population. It would not further the purposes of the robbery statute to require that the robbery victim have the same level of custody or control over the property that is required to establish that the perpetrator is guilty of possessing contraband.

Id. at 758.

Further, the Court acknowledged that "those who commit robberies are likely to regard all employees as potential sources of resistance, and their use of threats and force against those employees is not likely to turn on fine distinctions regarding a particular employee's actual or implied authority." Id. at 755. The Court then upheld the conviction of the defendant who had stolen from employees of the property owner.

If petitioner's theory were correct, a husband would be legally powerless to resist the theft of his wife's purse which she left in the car with him while she went on a quick errand. Obviously, petitioner's position is incorrect. The question in this case, then, is whether Hernandez was in "constructive possession" of the beer that was the property stolen. Focusing on

the facts, it is perfectly reasonable to accept that Hernandez was in control of, and the possessor of the vehicle that was attacked, and that the purpose of the robbers was to gain control of that beer which was in the car. The Third District Court of Appeal had no hesitancy about the issue although the term "constructive possession" was not mentioned in the opinion. Applying the deferential approach required by Jackson, this court may reverse the verdict only "if the evidence of innocence, or lack of evidence of guilt fails to establish the essential elements of the crime beyond a reasonable doubt." Jackson, supra, 443 U.S. at 319. Applying the chain of logic discussed here results in a "reasonable inference" . . . [of Hernandez' possession of the beer] that is supported by that chain of logic, rather than mere speculation dressed up in the guise of evidence." United States v. Katakis, 800 F.3d 1017, 1024 (9th Cir. 2015).

Finally, it cannot be ignored that the actual owner of the beer, Mr. Arechiga, had moved outside the circle of violence and left it to Mr. Hernandez to fend off the robbers who were insistent enough to get into the car to get the beer, and afterwards to beat Mr. Hernandez and slash his face.

In sum, considering that, as the appellate court found, the car that was attacked was Hernandez's car, that he was in possession and control of the car in which the beer was resting, that it was he who was attacked to facilitate the removal of the beer, this court cannot find that any fair-minded jurist would reject as irrational a conclusion that Hernandez was in constructive possession of the beer and thus was a victim of the robbery.

### C. Insufficient Evidence to Support the Battery Charge (Claim 3)

Petitioner's claim is not directed at the assault likely to cause great bodily injury for which the Court of Appeal found insufficient evidence. The claim is directed at petitioner's conviction on the after-the-fact-of-robbery slashing of Hernandez' ear-to-throat as a gang marker. This battery conviction was presented to the jury as a lesser included offense of mayhem. The Court of Appeal found:

> 4. Battery Causing Serious Bodily Injury—As a Lesser Included Offense of Aggravated Mayhem
> The trial court instructed the jury that in order to find defendant guilty of

15

> aggravated mayhem or the lesser included offense of battery causing serious bodily injury, the jury must first find defendant guilty of either robbery or assault. Then, determine whether a reasonable person would have known that the mayhem or battery was the natural and probable consequence of the robbery or the assault.
>
> Defendant contends because there was insufficient evidence to convict him of either robbery or assault, the evidence was necessarily insufficient to convict him of battery. Because we conclude the evidence was sufficient to convict defendant of robbery, this contention fails.

The sufficiency of the evidence for the robbery conviction has likewise been found for this habeas petition.

The Court of Appeal did not further expound in it discussion in that section on the "natural and probable consequence" factor because it determined that petitioner had participated in the throat slashing as a supportive element of gang participation after the fact of robbery itself.[4]

> Second, we must accept the trial court's interpretation of the evidence because it is supported by the evidence. The evidence was sufficient to support the conclusion that the slashing of Hernandez's face was meant to disfigure him and leave the mark as an advertisement for the Norteno gang. It did not facilitate the robbery, which had already been accomplished, and it was done with a separate intent.

People v. Martin at *5.

Reasonable jurists would not dispute the finding of the Court of Appeal. Claim 3 should be denied.

*Conclusion*

In light of the foregoing IT IS HEREBY RECOMMENDED that:

1. The petition be dismissed with prejudice;
2. That no Certificate of Appealability should issue;
3. That the Clerk of the Court should close the file

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within thirty (30) days

---

[4] Petitioner does not contend here that there was insufficient evidence to support his gang participation count.

16

after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Id.; see also Eastern District of California Local Rule 304(b).  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed with the court and served on all parties within ten (10) days after service of the objections.  Id. Rule 304(d).  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

Dated: December 10, 2018

/s/ Gregory G. Hollows
UNITED STATES MAGISTRATE JUDGE